IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROBERT A. CASTAPHENY,                    )
                                         )
                    Plaintiff,           )
                                         )          Civil Action No. 09-0424
          v.                             )
                                         )
WEST VIRGINIA STATE POLICE, LOGAN        )          Judge David Stewart Cercone
BCI, SARGENT J.P. FRYE, SARGENT B.M.     )          Magistrate Judge Lenihan
BROWN, and SENIOR TROOPER C.R.           )
HOLBERT,                                 )
                                         )          Doc. No. 27
                    Defendants.          )

## REPORT AND RECOMMENDATION

### I.     RECOMMENDATION

It is respectfully recommended that Defendants' Motion to Dismiss (Doc. No. 27) be denied

without prejudice, and that pursuant to  28 U.S.C. § 1406(a),  in the interests of justice, this case be

transferred forthwith to the Southern District of West Virginia, Charleston Division.

### II.    REPORT

In this civil rights action, Plaintiff, Robert A. Castapheny, proceeding *pro se,* asserts

violations of his constitutional rights by Defendants. In particular, Plaintiff alleges in his Complaint

that as a consequence of unlawful traffic stops, unlawful searches of a vehicle, unlawful body

searches, illegal entry into a home, an illegal arrest on an illegal search and seizure, illegal detention,

and reporting false information pertaining to the illegal arrest,  Defendants violated his Fourth, Fifth

and Fourteenth Amendment rights under the U.S. Constitution by subjecting him to unreasonable

searches and seizures, and denying him equal protection under the law and due process.  (Compl.,

¶¶ 39-40, 46-47.)   Plaintiff seeks compensatory and punitive damages, as well as injunctive and

declaratory relief.

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3). Plaintiff asserts venue lays in this district under 28 U.S.C. § 1391(b)(2) because he resides in this district. However, Defendants challenge whether venue in this district is proper, as well as this Court's personal jurisdiction over them.

### A.    Relevant Facts

The relevant facts, viewed in the light most favorable to Plaintiff, are as follows. At the time he commenced this action, Plaintiff resided in the Allegheny County Jail, which is located in Pittsburgh, Pennsylvania. While this action was pending, he was transferred to the State Correctional Institution at Houtzdale, Pennsylvania, in Clearfield County, where he is currently housed. Both institutions are located within the Western District of Pennsylvania.

Defendant West Virginia State Police, Logan BCI ("State Police") is a law enforcement agency with a barracks located in Logan, West Virginia. (Compl., ¶¶ 6, 11.) Defendants Sargent J.P. Frye, Sargent B.M. Brown, and Senior Trooper C.R. Holbert (collectively the "individual Defendants") are employed by Defendant State Police as police officers at the Logan, West Virginia barracks. (Compl., ¶¶ 7-9.)

During the early part of 2006, Plaintiff started traveling to Logan, West Virginia to spend time with his girlfriend, Tina Tolliver. (Compl., ¶ 10.) Plaintiff asserts that the State Police in Logan, WV were very focused upon and vigilant in patrolling and enforcing the law in the black community, which he alleges constitutes harassment and oppression of the black community. (Compl., ¶ 13.) Shortly after Plaintiff began traveling to Logan, WV, the State Police started targeting him. (Compl., ¶ 14.) This "targeting" was allegedly comprised of false traffic stops, resulting in vehicle and body searches under the threat of violence and arrest. (Compl., ¶ 15.)

During one such traffic stop on June 3, 2006, Plaintiff asserts that he made a comment to an unidentified police officer while the police officer was searching the vehicle to the effect that the frequency of the traffic stops resulting in no citation was a very clear indication of selective harassment. (Compl., ¶ 16.)  As a result of this comment, Plaintiff asserts that he was given a "frivolous citation of 'driving while under a suspended license.'" (Compl., ¶ 17.)  According to Plaintiff, support of his claim that the citation was "bogus" and thus done to harass him, is found in the facts that Plaintiff was not arrested, nor was his vehicle impounded as required by police procedure, and he was permitted to drive away after the traffic stop. (Compl., ¶ 18.)

The next day, on June 4, 2006, Plaintiff asserts that the police spotted him as one of two passengers in a vehicle driven by his girlfriend, stopped the vehicle and conducted an illegal search of the vehicle and seized a valid Pennsylvania license plate from the vehicle, despite presentation of valid registration documents to the officer. (Compl., ¶¶ 19-20.)  Consequently, Plaintiff was unable to travel back to Pittsburgh and missed work.   Plaintiff also sought the assistance of a Pennsylvania notary in providing proof of valid registration to the West Virginia State Police. According to Plaintiff, when the notary called to confirm that the West Virginia State Police received the affidavits and PENNDOT documents that were sent via facsimile, she was allegedly told to "stay out of it." (Compl., ¶ 21.)

Three days later, on June 7, 2006, Plaintiff contends that he was staying at the house of his girlfriend, Tina Tolliver, with the intention of going to the Logan BCI barracks to retrieve the license plate and file a formal complaint against the officers who had been harassing him and his girlfriend. (Compl., ¶22.)   In the early morning hours of June 8, 2006, Plaintiff alleges that the police came to the Tolliver household and obstructed the view from the door peep hole, thus preventing Tolliver

from identifying who was at the door.  Nor was Tolliver able to see the officers from the window as they had parked their vehicle down the street.  (Compl., ¶ 23-24.)  When Tolliver unlocked the door, the police allegedly forced their way in and asked where Plaintiff was.  (Compl., ¶ 25-26.) While still asleep, Plaintiff was handcuffed and awakened from the force of being lifted to his feet. Plaintiff was then removed, by force, from the Tolliver household and held under arrest without an arrest warrant.  (Compl., ¶¶ 27, 29.)  Plaintiff further contends that the police lied in the affidavit filed in support of the criminal complaint in an attempt to rehabilitate a grossly conducted violation of his constitutional rights.  (Compl., ¶ 30.)  On June 9, 2007, Plaintiff's employment was terminated.  (Compl., ¶ 31.)

At the time of Plaintiff's arrest, the police conducted a body search of Plaintiff and, as a result, the police allegedly found illegal drugs on Plaintiff.  Plaintiff remained incarcerated in West Virginia from the time of his arrest on June 8, 2006 in connection with the drug charges, for 347 days until May 21, 2007, when the charges were dropped.  (Compl., ¶¶ 32-33.)  In addition to the alleged violation of his constitutional rights, Plaintiff allegedly suffered a myriad of financial losses arising from his loss of liberty and lost employment.  (Compl., ¶¶ 32-33, 48.)

Plaintiff instituted the present action on April 4, 2009 pursuant to 42 U.S.C. § 1983, claiming in Count I of the Complaint that the aforementioned unlawful traffic stops, unlawful searches of the vehicle, and unlawful body searches violated his constitutional rights to be free from unreasonable searches and seizures and to be afforded equal protection under the law and due process, as guaranteed under the Fourth, Fifth and Fourteenth Amendments. (Compl., ¶ 39.) Moreover, Plaintiff contends that the police officers at Logan BCI, even those who merely answered phones or worked in dispatch, collaborated to deprive him of his constitutional rights.  (Compl., ¶ 40.)  In Count II,

Plaintiff contends that the aforementioned illegal entry by the police into the Tolliver household, Plaintiff's illegal arrest, illegal search and seizure, illegal detention, and reporting of false information by the police to support his illegal arrest, also violated his constitutional rights under the Fourth, Fifth, and Fourteenth Amendments. (Compl., ¶46.) Plaintiff further contends that the West Virginia State Police collaborated to deprive him of his rights and, in particular, avers that the conduct of the named individual Defendants was especially oppressive, and asks the Court to hold them jointly and severally liable. (Compl., ¶47.)

### B.   <u>Discussion</u>

The Defendants have moved to dismiss Plaintiff's Complaint with prejudice and in support, have advanced several arguments: (1) this Court lacks personal jurisdiction over Defendants under Rule 12(b)(2); (2) venue in this judicial district is improper under Rule 12(b)(3); and the complaint fails to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure in that (a) the West Virginia State Police and the individual state police troopers in their official capacities are immune from this civil rights lawsuit under the Eleventh Amendment; (b) the applicable statute of limitations bars all of Plaintiff's claims against all Defendants; (c) Plaintiff has failed to plead a viable Fourth Amendment injury; and (d) Plaintiff lacks standing to bring his Fourth Amendment claims based on Ms. Tolliver's vehicle. Plaintiff has failed to respond to Defendants' motion, despite this Court's order directing him to file a response and granting him an extension of time until April 2, 2010 to do so.

### 1.   **Personal Jurisdiction**

In responding to a motion to dismiss under Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of proving, by a preponderance of the evidence, facts

sufficient to establish personal jurisdiction over the defendants, by producing affidavits or other competent evidence. *Metcalfe v. Renaissance Marine, Inc.,* 566 F.3d 324, 330 (3d Cir. 2009) (citing *Pinker v. Roche Holdings Ltd.,* 292 F.3d 361, 368 (3d Cir. 2002); *Dayhoff Inc. v. H.J. Heinz Co.,* 86 F.3d 1287, 1302 (3d Cir. 1996)); *Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 65 (3d Cir. 1984) (citation omitted). If an evidentiary hearing is not held on the 12(b)(2) motion, then the plaintiff need only demonstrate a prima facie case of personal jurisdiction. *Metcalfe,* 566 F.3d at 330 (citing *O'Connor v. Sandy Lane Hotel Co.,* 496 F.3d 312, 316 (3d Cir. 2007)); *D'Jamoos v. Pilatus Aircraft Ltd.,* 566 F.3d 94, 102 (3d Cir. 2009) (citing *Miller Yacht Sales, Inc. v. Smith,* 384 F.3d 93, 97 (3d Cir. 2004)). In deciding a Rule 12(b)(2) motion, the court must accept as true all allegations contained in the complaint and view all factual disputes in plaintiff's favor. *D'Jamoos,* 566 F.3d at 102 (citing *Miller Yacht Sales, supra*).

The starting point for determining whether personal jurisdiction can be exercised over a nonresident defendant is Rule 4(e) of the Federal Rules of Civil Procedure. Rule 4(e) "authorizes personal jurisdiction over non-resident defendants to the extent permissible under the law of the state where the district court sits." *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino,* 960 F.2d 1217, 1221 (3d Cir. 1992) (citation omitted); *D'Jamoos,* 566 F.3d at 102 (citing *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n,* 819 F.2d 434, 436 (3d Cir. 1987)). Pennsylvania's long-arm statute, codified at 42 Pa.Cons. Stat. Ann. § 5322(b) (West 2004), permits Pennsylvania courts to exercise personal jurisdiction "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with [Pennsylvania] allowed under the Constitution of

the United States."[1]  Thus, as long as the requirements of the Due Process Clause of the United

States Constitution have been satisfied, jurisdiction will lie over non-resident defendants in

Pennsylvania.  *Farino,* 960 F.2d at 1221; *Pennzoil Prod. Co. v. Colelli & Assoc., Inc.,* 149 F.3d 197,

200 (3d Cir. 1998) (citing *Farino,* 960 F.2d at 1221; *Renner v. Lanard Toys Ltd.,* 33 F.3d 277, 279

(3d Cir. 1994)); *Santana Prod., Inc. v. Bobrick Washroom Equip.,* 14 F.Supp.2d 710, 713 (M.D.Pa.

1998).

     It is axiomatic that to satisfy due process, the defendant must have certain "minimum

contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional

notions of fair play and substantial justice.'"[2]  *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316

(1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940)) (other citations omitted).  The

minimum contacts requirement serves the purpose of "protect[ing] the defendant against the burdens

of litigating in a distant and inconvenient forum" by requiring that the "defendant's conduct and

connection with the forum State [be] such that [a defendant] should reasonably anticipate being

haled into court there."  *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291-92, 297

(1980) (citations omitted).  This framework enables "potential defendants to structure their primary

conduct with some minimum assurance as to where that conduct will and will not render them liable

to suit."  *Id.* at 297.  Thus, a plaintiff cannot unilaterally create the necessary contacts between the

---

1.  Subsection (a) of Pennsylvania's long-arm statute also provides for personal jurisdiction over
a person who engages in certain enumerated business transactions or activities in Pennsylvania,
or which are directed at a Pennsylvania resident/business.  42 Pa. Cons. Stat. Ann. § 5322(a).
However, the Complaint fails to assert any facts to support personal jurisdiction over Defendants
under Section 5322(a).

2.  The Due Process standard must be applied to each defendant.  *Carteret Sav. Bank, FA v.
Shushan,* 954 F.2d 141, 145 n.6 (3d Cir. 1992) (citing *Calder v. Jones,* 465 U.S. 783, 790
(1984)).

defendant and the forum; rather, "minimum contacts" can arise only by "'some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253 (1958)).

Personal jurisdiction can exist in one of two forms: specific jurisdiction or general jurisdiction. Specific jurisdiction applies where the cause of action is related to or arises from the defendant's contacts with the forum, *Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 451 (3d Cir. 2003) (quoting *Pinker,* 292 F.3d at 368), while general jurisdiction applies where the defendant's contacts with the forum are "continuous and systematic" but are not related to the plaintiff's cause of action*, Pennzoil,* 149 F.3d at 200 (citation omitted). In the instant matter, the Defendants argue that neither form of personal jurisdiction exists here.

### a.     Specific Jurisdiction

In determining whether it can exercise specific jurisdiction, the court must undertake a three-part inquiry. *D'Jamoos,* 566 F.3d at 102. Initially, the court must determine whether the defendant has "'purposefully directed'" its activities toward the forum State. *Id.* (quoting *Burger King,* 471 U.S. at 472 (quoting *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 775 (1984) (whether "minimum contacts" exist requires the court to examine "the relationship among the defendant, the forum, and the litigation."))). "Second, the litigation must 'arise out of or relate to' at least one of those activities." *Id.* (quoting *Helicopteros,* 466 U.S. at 414; *O'Connor,* 496 F.3d at 317). Finally, if the plaintiff has established the first two elements, only then does the court proceed to the third part of the inquiry–whether the defendant's contacts with the forum state are such that maintenance

of the action "'does not offend traditional notions of fair play and substantial justice.'"[3] *World-Wide Volkswagon,* 444 U.S. at 292 (citing *Int'l Shoe,* 326 U.S. at 316); *D'Jamoos,* 566 F.3d at 102.   In this regard, the court of appeals observed:

> The first two parts of the test determine whether a defendant has the requisite minimum contacts with the forum.   The threshold requirement is that the defendant must have "purposefully avail[ed] itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. [at 253]. To meet this requirement, the defendant's physical entrance into the forum is not necessary. *See Burger King*, 471 U.S. at 476, 105 S.Ct. at 2184; *Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir.1993). A defendant's contacts, however, must amount to "a deliberate targeting of the forum." *O'Connor*, 496 F.3d at 317. The "unilateral activity of those who claim some relationship with a nonresident defendant" is insufficient. *Hanson*, 357 U.S. at 253 . . ..

*D'Jamoos,* 566 F.3d at 102-03.

In the instant case, Plaintiff has not filed a response to Defendants' motion to dismiss, and therefore, he does not indicate which form of personal jurisdiction applies, nor does he provide any affidavits or other competent evidence in support of this Court's personal jurisdiction over Defendants.   Nonetheless, the Court has carefully reviewed the factual allegations contained in Plaintiff's Complaint and concludes that the allegations, even when taken as true and viewed in the light most favorable to Plaintiff, do not support a prima facie case of specific personal jurisdiction.

The allegations in the Complaint simply fail to establish that Defendants purposely directed

---

3.  With regard to the third prong of the specific jurisdiction analysis, the court should consider the following factors: "'the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and the 'shared interest of the several States in furthering fundamental substantive social policies.'" *Burger King,* 471 U.S. at 477 (quoting *World-Wide Volkswagon,* 444 U.S. at 292).

any of their activities at Plaintiff while he was in Pennsylvania.  To the contrary, the Complaint clearly establishes that all of the activities which give rise to the instant lawsuit allegedly occurred in West Virginia, and involved police officers assigned to the Logan barracks of the West Virginia State Police.  The so-called illegal traffic stops, illegal searches and seizures, and warrantless arrest, all allegedly occurred in West Virginia and were conducted by employees of Defendant West Virginia State Police assigned to the Logan barracks.  Moreover, the fact that a Pennsylvania notary allegedly interceded on Plaintiff's behalf by faxing to the West Virginia State Police PENNDOT vehicle registration documents likewise fails to establish the required contact, as that contact was initiated by a Pennsylvania resident and directed toward West Virginia, not vice versa.  Nor is it alleged that the West Virginia State Police initiated any communication directed to the notary in Pennsylvania.[4]  In any event, the fax from the Pennsylvania notary is considered, at best, a unilateral activity on Plaintiff's behalf, which is simply insufficient to establish specific personal jurisdiction over non-resident Defendants.  *D'Jamoos,* 566 F.3d at 103; *Time Share Vacation Club*, 735 F.2d at 65 (citing *Hanson v. Denckla*, 357 U.S. at 253).   Accordingly, the Court finds that Plaintiff has failed to allege any facts to suggest that the Defendants purposefully directed their activities vis a vis Plaintiff toward Pennsylvania.  Likewise, Plaintiff is unable to establish the second requirement, that this litigation arises out of or relates to any activities purposefully directed toward Pennsylvania, since he has failed to establish any activities purposefully directed to Pennsylvania by Defendants in the first instance.

Because the Court has found that Plaintiff has failed to establish the first two requirements

---

4.  Even if Plaintiff had alleged that the West Virginia State Police initiated communication with the notary in Pennsylvania, that communication alone does not give rise, nor is it related in any way, to the constitutional violations alleged in the instant litigation.

of specific personal jurisdiction, it need not address the third element, *i.e.,* whether the exercise of personal jurisdiction over Defendants would offend traditional notions of fair play and substantial justice.  *D'Jamoos,* 566 F.3d at 106 (citations omitted).  Accordingly, the Court finds this Court lacks specific personal jurisdiction over Defendants.

### b.      General Jurisdiction

Having failed to establish a prima facie case of specific personal jurisdiction over the Defendants, Plaintiff must now show that Defendants had "continuous and systematic" contacts with Pennsylvania, such that general personal jurisdiction exists.  However, Plaintiff's Complaint is completely devoid of any allegations that would suggest such contacts.

The Court of Appeals has held that a plaintiff must prove significantly more than mere minimum contacts to invoke the court's general jurisdiction.  *Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n,* 819 F.2d 434, 437 (3d Cir. 1987) (citations omitted).  Thus, to satisfy due process, the contacts of a nonresident defendant with the form must be continuous and substantial. *Id.* (citations omitted).     For example, continuous and substantial contacts were found to exist where the evidence of record showed that defendants transacted business in the forum "[b]y maintaining an office and an agent in [the forum] on an ongoing basis, entering into contractual relationships in [the forum], and designating and maintaining billing and technical contacts within [the forum]," thereby subjecting the non-resident defendants to the general jurisdiction of the forum district.  *Twentieth Century Fox Film Corp. v. iCraveTV,* Nos. Civ.A. 00-121 and 00-120, 2000 WL 255989, * 4 (W.D.Pa. Feb.8, 2000) (citations omitted).

A review of Plaintiff's Complaint reveals that the Defendants have not engaged in any activities in Pennsylvania, let alone any continuous and substantial business activities, that would

allow this Court to properly exercise jurisdiction over them. Indeed, Plaintiff's Complaint is completely devoid of any allegations of fact suggesting any contacts by the Defendants with Pennsylvania. Accordingly, Plaintiff cannot establish a prima facie case of general personal jurisdiction over Defendants.

### 2.     Venue in Western District of Pennsylvania is Improper

Defendants also move to dismiss this matter on the basis of improper venue under Rule 12(b)(3). In support, Defendants submit Plaintiff's reliance on 28 U.S.C. § 1391(b)(2), as a basis for finding venue proper in the district were Plaintiff resides, is misplaced as the plain language of Section 1391(b)(2) makes clear that venue does not lay in this judicial district. Defendants further submit that West Virginia is the only place where venue might possibly lay.

In this circuit, defendants have the burden of proving that venue in the selected judicial district is improper. *Myers v. Am. Dental Ass'n,* 695 F.2d 716, 724 (3d Cir. 1982) (citation & footnote omitted); *see also Manning v. Flannery,* Civ. A. No. 09-3190, 2010 WL 55295, at *4 & n. 4 (E.D.Pa. Jan. 6, 2010) (citing *Myers, supra*) (other citations & footnote omitted). In deciding a motion to dismiss under Rule 12(b)(3), the Court must generally accept as true the allegations in the pleadings. *Heft v. AAI Corp.*, 355 F.Supp. 2d 757, 762 (M.D.Pa. 2005) (citing *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002); *Myers,* 695 F.2d at 724) (footnote omitted). In addition, "[t]he parties may submit affidavits in support of their positions, and may stipulate as to certain facts, but the plaintiff is entitled to rely on the allegations of the complaint absent evidentiary challenge." *Heft,* 355 F.Supp. 2d at 762 (citing *Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141, 142 & n. 1 (3d Cir.1992); *Myers*, 695 F.2d at 724). In either event, the Court is required to view the facts in the light most favorable to the Plaintiff. *Id.* (citing *Carteret* and *Myers, supra*).

12

In deciding Defendants' motion to dismiss under 12(b)(3), the Court turns to the applicable statute on venue, which provides in relevant part:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).[5]  Viewing the factual allegations in the Complaint as true, the Court is compelled to find that the Western District of Pennsylvania is not a proper venue under any of the subsections of Section 1391(b).  Rather, it appears that venue would be proper in the Southern District of West Virginia.

In reaching this conclusion, the Court notes that the Complaint alleges that Defendant State Police is a law enforcement agency in the state of West Virginia, and specifically names the Logan BCI barracks of the West Virginia State Police.  The Complaint further alleges that  the individual Defendants are police officers employed by Defendant State Police.  (Compl. ¶¶ 6-10.)  Plaintiff fails to assert any facts, either in his Complaint or in any supplemental filing, that establish that Defendants reside in any state other than West Virginia, that any of the events giving rise to his claims occurred in Pennsylvania, or that a substantial part of property that is the subject of his suit is situated in Pennsylvania.  In addition, the Court takes judicial notice of the fact that the Logan BCI barracks, which is located in Logan County, West Virginia, is situated within the Southern

---

5. Section 1391(b) applies here because Plaintiff has invoked this Court's federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343.

District of West Virginia, Charleston Division.  Thus, under either subsection (1) or (2) of Section 1391(b), the Southern District of West Virginia (Charleston Division) is the proper venue, not the Western District of Pennsylvania, as all Defendants appear to reside in West Virginia, at least one of the Defendants, West Virginia State Police Logan BCI, is located within that judicial district, and all of the events giving rise to the claim occurred in Logan, West Virginia. (Compl., ¶ ¶ 10-14.)[6]

### 3.      Dismissal or Transfer Under 28 U.S.C. § 1406(a)

Having concluded that the Western District of Pennsylvania is  not a proper venue and that this Court lacks personal jurisdiction over Defendants, the question remains as to whether the Court should dismiss this action or transfer it to the Southern District of West Virginia, Charleston Division.  Although Defendants have not requested the case be transferred as an alternative to dismissal, the Court nonetheless recognizes *sua sponte* its authority under 28 U.S.C. § 1406(a) to transfer this matter to a judicial district where the matter could have been brought.

The language of Section 1406(a) directs, in the absence of proper venue, that the Court *shall* dismiss the case or, if it is in the interest of justice, transfer it to another district where it might have been brought.  Given the procedural posture of this case, the Court recommends that this case be transferred rather than dismissed.  *See, e.g., Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467 (1962) (stating that "[n]ormally transfer will be in the interest of justice because [ ] dismissal of an action that could be brought elsewhere is 'time-consuming and justice-defeating'"); *Telesis Mergers & Acquisitions, Inc.  v. Atlantis Fed. Serv., Inc.*, 918 F.Supp. 823, 835 (D.N.J. 1996) (interests of justice dictated transfer under § 1406(a) rather than dismissal for lack of personal jurisdiction).  *Cf.*

---

6.  Subsection (3) of Section 1391(b) is not applicable here since the Court has concluded that this action may be brought in the Southern District of West Virginia (Charleston Division).

*Fritsch v. The F/V Anna Marie*, Civ. No. 05-3495 (JBS), 2006 WL 995411, *3, n. 5 (D.N.J. Apr. 11, 2006) (noting that, under "§ 1406(a), a district court, upon a motion or *sua sponte,* may transfer a case to a court of proper jurisdiction when such a transfer is in the interest of justice", and that the court has "'broad discretion in deciding whether to order a transfer.'") (quoting *Decker v. Dyson*, 2006 U.S.App. LEXIS 1272, *7 n.3 (3d Cir. Jan. 19, 2006) (quoting *Caldwell v. Palmetto State Sav. Bank of S.C.*, 811 F.2d 916, 919 (5th Cir. 1987))).   Moreover, the district court aptly noted in *Klugman v. Anderson*:

> [A]lthough we find that this court lacks personal jurisdiction over the defendants and venue is improper in this district, we will nonetheless deny the motion to dismiss and instead exercise the discretionary power of the district court to transfer this matter, sua sponte, to the United States District Court for the Western District of Washington, a district court with personal jurisdiction over defendants and in which venue may be properly laid. 28 U.S.C. § 1406; *Barnes v. Bonifacio*, 605 F.Supp. 223, 225 (W.D.Pa.1985). Such a course is, we believe, in the interest of justice as it will prevent the duplication of filing costs and possible statute of limitations problems that could arise from a dismissal at this point.

*Klugman v. Anderson*, Civ. A. No. 91-4123, 1991 WL 171392, *2 (E.D. Pa. Aug. 30, 1991).

Likewise, in the case at bar, the Court finds that transfer is the better course and in the interest of justice, as dismissing the action and requiring the *pro se* Plaintiff to refile his Complaint would be unduly duplicative and costly, and may possibly alleviate statute of limitations problems. Thus, the Court recommends this case be transferred to the United States District Court for the Southern District of West Virginia, Charleston Division, and Defendants' Motion to Dismiss be denied without prejudice to its renewal before the transferee court.[7]  By recommending that this

---

7.  Because the Court recommends this case be transferred to the Southern District of West Virginia, Charleston Division, it declines to reach the other arguments advanced by Defendants in support of their motion to dismiss.

action be transferred to the Southern District of West Virginia, the Court is not unmindful of the potential financial hardship and inconvenience to Plaintiff as the result of such a transfer. Nonetheless, the cost and inconvenience to Plaintiff do not entitle this Court to disregard the well-established jurisdictional requirements. *Klugman,* 1991 WL 171392, at *2.

### III.     CONCLUSION

For the reasons set forth above, the Court concludes that Defendants are not and should not be subject to personal jurisdiction in Pennsylvania, and that the Western District of Pennsylvania is an improper venue for this action. Accordingly, the Court recommends that pursuant to 28 U.S.C. § 1406(a), in the interest of justice, this case be transferred forthwith to the Southern District of West Virginia, Charleston Division, and Defendants' Motion to Dismiss (Doc. No. 27) be denied without prejudice to its renewal before the transferee court.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of service of a copy of this Report and Recommendation to file objections. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

Dated: April 15, 2010                               BY THE COURT:

                                                    _____
                                                    LISA PUPO LENIHAN
                                                    U.S. Magistrate Judge

cc:     Honorable David Steward Cercone
        United States District Judge

16

Robert A. Castapheny, *Pro Se*
JD-9263
SCI Houtzdale
P.O. Box 1000
Houtzdale, PA 16698
*Via U.S. Mail*

All Counsel of Record
*Via Electronic Mail*