```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

                         CHARLESTON
```

**ROBERT A. CASTAPHENY,**

      **Plaintiff,**

v.                                    Case No. 2:10-cv-00735

**WEST VIRGINIA STATE POLICE,**
**Logan BCI,**
**SERGEANT J. P. FRYE,**
**SERGEANT B. M. BROWN, and**
**SENIOR TROOPER C.R. HOLBERT,**

      **Defendants.**

## PROPOSED FINDINGS AND RECOMMENDATION

On April 14, 2009, Plaintiff's Complaint was filed in the United States District Court for the Western District of Pennsylvania (docket # 3). Summonses were sent to the United States Marshals Service in that District on November 18, 2009 (# 19). On January 22, 2010, Defendants filed a motion to dismiss for failure to state a claim on which relief can be granted (# 27). On May 11, 2010, the motion to dismiss was denied without prejudice and this case was transferred to this District pursuant to 28 U.S.C. § 1404(a) (# 31).

On May 26, 2010, Defendants renewed their motion to dismiss (# 36) and submitted a memorandum in support (# 37). By Order entered June 22, 2010 (# 39), Plaintiff was directed to file his response to the motion by July 6. Plaintiff filed a motion requesting additional time (# 40), which was granted by Order entered August

19, 2010 (# 43).  Plaintiff was instructed to file his response by September 17, 2010 and to focus on the statute of limitations defense raised by the defendants.  Id.  Plaintiff did not file a response.

## PLAINTIFF'S ALLEGATIONS

Plaintiff's Complaint alleges that during the early part of 2006, he traveled to Logan, West Virginia to spend weekends with Tina Tolliver.  (Complaint, # 3, at 3.)  He claims that the West Virginia State Police targeted him as a "new black face" in town and subjected him to a number of false traffic stops, with vehicle and body searches.  Id. at 4.  On June 8, 2006, Plaintiff was arrested at Tolliver's residence.  Id. at 5-7.  In Count One of his Complaint, Plaintiff alleges as follows:

> 39.  By way of unlawful traffic stops, unlawful searches of vehicle and unlawful body searches, Plaintiff's constitutional rights were violated under the Fourth, Fifth and Fourteenth Amendments as citizens are to be protected from unreasonable search and seizures. Citizens are entitled to equal protection under the law and to due process.  (# 3, at 8.)

Count Two contains similar language:

> 46.  By way of illegal entry into a home, an illegal arrest, an illegal search and seizure, illegal detention and reporting false information pertaining to the illegal arrest, the plaintiff's rights were violated under the Fourth, Fifth and Fourteenth Amendments as citizens are to be protected from unreasonable search and seizure, equal protection under the law and entitled to due process.  Id. at 10.

The Court interprets these paragraphs to state claims for unreasonable searches and seizures, false arrest, false

imprisonment, malicious prosecution, violation of due process and violation of equal protection.

Plaintiff remained in custody until May 21, 2007, when the charges were dropped.  Id. at 7.  Plaintiff seeks compensatory damages, punitive damages, a declaratory judgment that his civil rights were violated, and injunctive relief in the form of a public notice.  Id. at 9-12.

### FACTS RELEVANT TO MOTION TO DISMISS

The facts set forth here are taken from Plaintiff's Complaint, the defendants' memorandum, Plaintiff's criminal docket sheet in the United States District Court for the Western District of Pennsylvania, and Plaintiff's criminal case file in this Court.  In June, 2006, Plaintiff was on supervised release as a result of his conviction in the Western District of Pennsylvania of Racketeer Influenced and Corrupt Organization ("RICO") charges.  (# 37, at 1; United States v. Castapheny, No. 2:96-CR-185 (W.D. Pa.).  On April 30, 1998, Plaintiff was sentenced to serve 87 months in prison, followed by three years of supervised release.  Id., Judgment in a Criminal Case, entered April 30, 1998, # 2061.

On June 8, 2006, West Virginia State Troopers entered Tina Tolliver's residence without a warrant and arrested Plaintiff upon finding powder cocaine, crack cocaine, and $1,095 on his person. State charges were filed against him.  On November 8, 2006, Plaintiff was indicted by a Federal grand jury for possession with

intent to distribute five grams or more of cocaine base. United States v. Castapheny, No. 2:06-cr-238 (S.D. W. Va., # 1). Plaintiff's first appearance in this Court occurred on November 30, 2006. Id., # 13. The State charges were apparently dropped. Plaintiff's defense counsel successfully moved to suppress the drugs and money and the United States dismissed the case on May 7, 2007. Id., ## 59-61. In the Memorandum Opinion and Order suppressing the evidence, the presiding District Judge wrote:

> From the testimony and other evidence taken at the suppression hearing in this matter, the court makes the following factual findings. In the early morning of June 8, 2006, Sergeant James B. Frye and Sergeant Brian Michael Brown of the West Virginia State Police were investigating an alleged assault on a West Virginia State trooper. Their investigation led them to suspect that defendant Robert Castapheny might have been involved in the assault. Having been informed that defendant was staying with his girlfriend, Tina Tolliver, at her residence in Logan, West Virginia, the troopers arrived there at approximately 5:00 a.m. on June 8, 2007. The troopers, who were dressed in their State Police uniforms, parked their cruiser slightly uphill from the Tolliver residence, but within view of the house. They then approached the front door and knocked, and the door was opened by a young woman later identified as Tina Tolliver.[1]
>
> At this point, Sgt. Frye and Sgt. Brown asked whether Robert Castapheny was in the house, and Tolliver responded something to the effect that Castapheny was "over there" or "right here," while pointing to another spot within the front room of the house, but not in view of the troopers from their position outside the front

---

[1] Tolliver, who was called as a witness for the defense, testified that the troopers opened the door and entered the house without knocking. The court finds the troopers' testimony to be more credible on this point, because of the consistency of their testimony and their demeanor on the stand.

     door.  Although Sgt. Brown testified that they then asked Tolliver if they could speak with Castapheny, Sgt. Frye's testimony did not corroborate that contention. Importantly, both troopers admitted that they did not ask permission to enter the residence.  Rather, they took her answer and her act of pointing to defendant as implied consent to enter the house and speak with Castapheny.

     Once inside, the troopers observed defendant seated in a chair nearby and asked him whether his name was Robert Castapheny.  He answered affirmatively and stood up, although it is unclear whether he did so independently or at the direction of Sgt. Frye.  Sgts. Frye and Brown testified that they then noticed a baggie of marijuana on the chair where he had been sitting, and a bulge in his pants pocket.  Sgt. Frye patted defendant down and discovered relatively large quantities of powder cocaine and crack cocaine, as well as $1,905.00 in cash.[2]  Defendant was then arrested and taken to the Logan detachment of the West Virginia State Police.

Id., # 59, at 1-3.

     The government has failed to prove by a preponderance of the evidence that Tolliver consented to the troopers' entry into her home.  It was only after the troopers entered the front room of the house that they observed defendant and had reason to search his person, on which they discovered the evidence that provides the basis for the charges against him.  Indeed, prior to entering the house, Sgt. Frye and Sgt. Brown apparently had no reason to believe defendant to be involved in any illicit drug activity; their sole purpose in going to the Tolliver residence was to question him with regard to an unrelated assault on a State trooper.

Id. at 6.

     On June 12, 2006, the Probation Department in the Western

---

[2] Much of the testimony and argument at the hearing centered around discrepancies between the troopers' testimony about the marijuana they observed on the chair and statements in subsequent police reports about marijuana taken from defendant's person.  Because the court grants the motions to suppress on the basis of the troopers' entry into the house, the court need not reach the issues raised by these discrepancies.

District of Pennsylvania filed a petition, alleging that Plaintiff had violated his term of supervised release. That petition was withdrawn on July 5, 2007 and the case was closed. Castapheny, No. 2:96-CR-185, # 2488. Plaintiff is currently incarcerated in the Pennsylvania State Correctional Institution at Houtzdale.

## STANDARD OF REVIEW

Pursuant to the provisions of 28 U.S.C. § 1915A, the court screens each case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. On review, the court must dismiss the case if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. In Bell Atlantic Corp v. Twombly, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Id. at 555.

The Supreme Court further explained its holding in Twombly in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), a civil rights case. The Court wrote:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted). Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556. * * *
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

129 S. Ct. at 1949-50.

## ANALYSIS

Defendants' motion raises several defenses, which will be addressed in order.

### Official Capacity

First, Defendants assert that Plaintiff's Complaint fails to state a claim upon which relief can be granted because no § 1983 claim lies against the West Virginia State Police or the West Virginia State Troopers in their official capacities. (# 37, at 7.) Plaintiff's Complaint states that he is suing the defendants in their individual and official capacities. (Complaint, # 3, at

7

2.)

It is well settled that civil rights actions against an agency of a State, such as the West Virginia State Police, are barred by the Eleventh Amendment to the Constitution of the United States. <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 71 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983"). In a footnote, the Supreme Court wrote that "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State,'" citing <u>Kentucky v. Graham</u>, 473 U.S. 159, 167 n.14 (1985). <u>Id.</u> n.10.

For these reasons, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff's Complaint for money damages against the defendants in their official capacities fails to state a claim upon which relief may be granted. Accordingly, it is respectfully **RECOMMENDED** that the presiding District Judge **DISMISS** with prejudice those portions of Plaintiff's Complaint which requests money damages against the defendants in their official capacities.

### Statute of Limitations

Second, Defendants argue that the two-year statute of limitations for § 1983 claims expired prior to Plaintiff filing his suit (# 37, at 8-9). Plaintiff's Complaint is date-stamped as

8

having been received by the Clerk in the Western District of Pennsylvania on Monday, April 13, 2009 (# 3, at 1).

Reading and interpreting the Complaint liberally, the undersigned has identified claims for unreasonable searches and seizures, false arrest, false imprisonment, malicious prosecution, violation of due process and violation of equal protection. West Virginia has a two-year statute of limitations for cases similar to § 1983 cases and other personal injuries. W. Va. Code § 55-2-12(b)(1981); see McCausland v. Mason County Bd. of Educ., 649 F.2d 278 (4th Cir. 1981; Rodgers v. Corporation of Harpers Ferry, 371 S.E.2d 358 (W. Va. 1988).

"[T]he accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." Wallace v. Kato, 549 U.S. 384, 388 (2007). [Emphasis in the original.] Generally speaking, accrual occurs "when the plaintiff has a complete and present cause of action." Id. [Citations omitted.]

The searches and seizures of which Plaintiff complains ended on June 8, 2006. The statute of limitations for these claims expired on June 8, 2008, ten months before Plaintiff filed suit.

False arrest and false imprisonment overlap and are based on detention without legal process. Id. The cause of action for false arrest and false imprisonment accrue "once the victim becomes held *pursuant to such process* - when, for example, he is bound over by a magistrate or arraigned on charges." Id. at 389. [Emphasis in

9

the original.] Even if one ignores the State proceedings in the Magistrate Court of Logan County and considers only the criminal proceedings against Plaintiff in this Court, it is plain that Plaintiff was held pursuant to legal process no later than November 30, 2006. The statute of limitations for false arrest and false imprisonment expired no later than November 30, 2008, five months before Plaintiff filed suit.

Malicious prosecution is based on *wrongful institution* of legal process. Id. at 390. [Emphasis in the original.] "The essence of a malicious prosecution claim is a groundless prosecution." Brummett v. Camble, 946 F.2d 1178, 1183 (5th Cir. 1991). At common law, to state a claim for malicious prosecution, the underlying criminal proceeding must terminate in the plaintiff's favor. Id. A § 1983 claim based on malicious prosecution accrues when the criminal proceedings are terminated in the plaintiff's favor which, in Mr. Castapheny's case, occurred on May 7, 2007 when the United States dismissed. Accordingly Plaintiff's claim for malicious prosecution was filed within the two years following the accrual of that cause of action.

Plaintiff's claims for violation of due process and equal protection of law relate to his treatment by the defendants prior to and through his arrest on June 8, 2006, and the two-year statute of limitations expired as to these claims no later than June 8, 2008.

The undersigned proposes that the presiding District Judge

**FIND** that the statute of limitations has expired as to all but one of Plaintiff's claims (malicious prosecution). It is respectfully **RECOMMENDED** that the presiding District Judge **DISMISS** with prejudice those portions of Plaintiff's Complaint which state claims other than for malicious prosecution.

### Failure to State a Claim Upon Which Relief Can Be Granted

Third, Defendants argue that Plaintiff's claim of lack of probable cause for his arrest and prosecution is preposterous, given that he was arrested in possession of marijuana, powder cocaine, crack cocaine and a significant amount of cash, in a jurisdiction outside of his permitted travel within the Western District of Pennsylvania. (# 37, at 9.) In support of their contention that suppression of the evidence does not vitiate probable cause, Defendants cite Townes v. City of New York, 176 F.3d 138, 149 (2d Cir. 1999). Id. at 10.

The Fourth Circuit has not decided a case which cites Townes, but Townes has been relied upon by district courts within the Fourth Circuit. See Ware v. James City County, Virginia, 652 F. Supp.2d 693 (E.D. Va. 2009); Vaughn v. Davis, No. 8:07-cv-1173, 2008 WL 867761 (D. S.C. Jan. 31, 2008). The Second Circuit explained in Townes why the suppression of evidence in a criminal case does not necessarily translate to compensable injury for a constitutional violation:

> Here, there is a gross disconnect between the constitutional violations (Townes's Fourth Amendment right to be free from unreasonable searches and seizures)

11

>and the injury or harm for which Townes seeks a recovery (his subsequent conviction and incarceration). The evil of an unreasonable search or seizure is that it invades privacy, not that it uncovers crime, which is no evil at all. [FN 5. It is hardly necessary to say that an unreasonable search cannot lead foreseeably to a criminal conviction unless the victim has in fact committed a crime.]
>
>No Fourth Amendment value would be served if Townes, who illegally possessed firearms and narcotics, reaps the financial benefit he seeks. Townes has already reaped an enormous benefit by reason of the illegal seizure and search to which he was subjected: his freedom, achieved by the suppression of evidence obtained in violation of the Fourth Amendment. That benefit to Townes is merely incidental to the purpose of suppression, which is to compel law enforcement compliance with the Fourth Amendment and thereby prevent the invasions of law-abiding citizens' privacy.

176 F.3d at 148.

The undersigned proposes that the presiding District Judge **FIND** that the prosecution of Plaintiff was not wrongfully instituted and certainly not groundless. There was ample evidence recovered which established that Plaintiff was engaged in multiple violations of Federal and State law. The facts relating to Plaintiff's malicious prosecution claim establish that he cannot satisfy the essential elements.

### Standing

Fourth, Defendants argue that Plaintiff's Complaint fails to state a claim upon which relief can be granted because he lacks standing to make Fourth Amendment claims based on traffic stops of Ms. Tolliver's vehicle. It is not necessary to address this argument further because the vehicle stops occurred prior to June

12

8, 2006.

### RECOMMENDATION

It is respectfully **RECOMMENDED** that Defendants' Renewed Motion to Dismiss (# 36) be granted with prejudice.

The parties are notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, Chief United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendation" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendation" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the presiding District Judge.

The Clerk is directed to file this "Proposed Findings and

Recommendation," to mail a copy of the same to Plaintiff, and to transmit it to counsel of record.

   October 26, 2010
          Date

*/s/ Mary E. Stanley*
Mary E. Stanley
United States Magistrate Judge