# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

ROBERT A. CASTAPHENY,

          Plaintiff,

v.                                CIVIL ACTION NO. 2:10-cv-00735

WEST VIRGINIA STATE POLICE, et al.,

          Defendants.

## MEMORANDUM OPINION & ORDER

Pending before the court is the Defendants' Renewed Motion to Dismiss [Docket 36], filed May 26, 2010. Pursuant to 28 U.S.C. § 636 and a Standing Order, this civil case, including the above motion, was referred to the Honorable Mary E. Stanley, United States Magistrate Judge, for proposed findings of fact and recommendations for disposition. On October 26, 2010, the Magistrate Judge submitted proposed findings and made various recommendations. On November 10, 2010, the plaintiff filed timely objections ("Objections" [Docket 45]) to the proposed findings and recommendations ("PF&R" [Docket 44]). On November 17, 2010, the defendants, the West Virginia State Police, Logan BCI, Sergeant J.P. Frye, Sergeant B.M. Brown, and Trooper C.R. Holbert filed a timely response in opposition to the plaintiff's objections ("Response" [Docket 46]). This matter is ripe for review. I will review *de novo* those portions of the PF&R to which the plaintiff objects.

**I.     Standard of Review**

    **a.     Motion to Dismiss Standard**

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of a complaint or pleading. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). Federal Rule of Civil Procedure 8 requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. As the Supreme Court recently reiterated in *Ashcroft v. Iqbal*, that standard "does not require 'detailed factual allegations' but 'it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) for the proposition that "on a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation'"). A court cannot accept as true legal conclusions in a complaint that merely recite the elements of a cause of action supported by conclusory statements. *Iqbal*, 129 S. Ct. at 1949-50. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 570). To achieve facial plausibility, the plaintiff must plead facts that allow the court to draw the reasonable inference that the defendant is liable, and those facts must be more than merely consistent with the defendant's liability to raise the claim from merely possible to probable. *Id.*

In determining whether a plausible claim exists, the court must undertake a context-specific inquiry, "[b]ut where the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)). A complaint must contain enough facts to "nudge[] [a] claim across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### b. Magistrate Judge's Recommendations

When a Magistrate Judge issues a recommendation on a dispositive matter, the court reviews *de novo* those portions of the Magistrate Judge's report to which specific objections are filed. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). When a party files an objection that is too general or conclusory to focus attention on any specific error supposedly committed by the Magistrate Judge, the court need not conduct a *de novo* review. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 316 (4th Cir. 2005); *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). Moreover, when a party fails to object to a portion of the Magistrate Judge's report, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation. *See Diamond*, 416 F.3d at 315.

## I. Background

Because the plaintiff has not objected, and finding no clear error, I adopt Magistrate Judge Stanley's liberal reading of the Complaint, wherein she identifies "claims for unreasonable searches and seizures, false arrest, false imprisonment, malicious prosecution, violation of due process and violation of equal protection." (PF&R, at 2-3.) For the same reasons, I further adopt and incorporate herein Magistrate Judge Stanley's recitation of facts and allegations relevant to the motion to dismiss:

> Plaintiff's Complaint alleges that during the early part of 2006, he traveled to Logan, West Virginia to spend weekends with Tina Tolliver. (Complaint, # 3, at

3.) He claims that the West Virginia State Police targeted him as a "new black face" in town and subjected him to a number of false traffic stops, with vehicle and body searches. Id. at 4. On June 8, 2006, Plaintiff was arrested at Tolliver's residence. Id. at 5-7. In Count One of his Complaint, Plaintiff alleges as follows:

> 39. By way of unlawful traffic stops, unlawful searches of vehicle and unlawful body searches, Plaintiff's constitutional rights were violated under the Fourth, Fifth and Fourteenth Amendments as citizens are to be protected from unreasonable search and seizures. Citizens are entitled to equal protection under the law and to due process. (# 3, at 8.)

Count Two contains similar language:

> 46. By way of illegal entry into a home, an illegal arrest, an illegal search and seizure, illegal detention and reporting false information pertaining to the illegal arrest, the plaintiff's rights were violated under the Fourth, Fifth and Fourteenth Amendments as citizens are to be protected from unreasonable search and seizure, equal protection under the law and entitled to due process. Id. at 10.

The Court interprets these paragraphs to state claims for unreasonable searches and seizures, false arrest, false imprisonment, malicious prosecution, violation of due process and violation of equal protection.

Plaintiff remained in custody until May 21, 2007, when the charges were dropped. Id. at 7. Plaintiff seeks compensatory damages, punitive damages, a declaratory judgment that his civil rights were violated, and injunctive relief in the form of a public notice. Id. at 9-12.

[. . .]

The facts set forth here are taken from Plaintiff's Complaint, the defendants' memorandum, Plaintiff's criminal docket sheet in the United States District Court for the Western District of Pennsylvania, and Plaintiff's criminal case file in this Court. In June, 2006, Plaintiff was on supervised release as a result of his conviction in the Western District of Pennsylvania of Racketeer Influenced and Corrupt Organization ("RICO") charges. (# 37, at 1; United States v. Castapheny, No. 2:96-CR-185 (W.D. Pa.). On April 30, 1998, Plaintiff was sentenced to serve 87 months in prison, followed by three years of supervised release. Id., Judgment in a Criminal Case, entered April 30, 1998, # 2061.

On June 8, 2006, West Virginia State Troopers entered Tina Tolliver's residence without a warrant and arrested Plaintiff upon finding powder cocaine,

crack cocaine, and $1,095 on his person. State charges were filed against him. On November 8, 2006, Plaintiff was indicted by a Federal grand jury for possession with intent to distribute five grams or more of cocaine base. United States v. Castapheny, No. 2:06-cr-238 (S.D. W. Va., # 1). Plaintiff's first appearance in this Court occurred on November 30, 2006. Id., # 13. The State charges were apparently dropped. Plaintiff's defense counsel successfully moved to suppress the drugs and money and the United States dismissed the case on May 7, 2007. Id., ## 59-61. In the Memorandum Opinion and Order suppressing the evidence, the presiding District Judge wrote:

> From the testimony and other evidence taken at the suppression hearing in this matter, the court makes the following factual findings. In the early morning of June 8, 2006, Sergeant James B. Frye and Sergeant Brian Michael Brown of the West Virginia State Police were investigating an alleged assault on a West Virginia State trooper. Their investigation led them to suspect that defendant Robert Castapheny might have been involved in the assault. Having been informed that defendant was staying with his girlfriend, Tina Tolliver, at her residence in Logan, West Virginia, the troopers arrived there at approximately 5:00 a.m. on June 8, 2007. The troopers, who were dressed in their State Police uniforms, parked their cruiser slightly uphill from the Tolliver residence, but within view of the house. They then approached the front door and knocked, and the door was opened by a young woman later identified as Tina Tolliver.[1]
>
> At this point, Sgt. Frye and Sgt. Brown asked whether Robert Castapheny was in the house, and Tolliver responded something to the effect that Castapheny was "over there" or "right here," while pointing to another spot within the front room of the house, but not in view of the troopers from their position outside the front door. Although Sgt. Brown testified that they then asked Tolliver if they could speak with Castapheny, Sgt. Frye's testimony did not corroborate that contention. Importantly, both troopers admitted that they did not ask permission to enter the residence. Rather, they took her answer and her act of pointing to defendant as implied consent to enter the house and speak with Castapheny.

---

[1] Tolliver, who was called as a witness for the defense, testified that the troopers opened the door and entered the house without knocking. The court finds the troopers' testimony to be more credible on this point, because of the consistency of their testimony and their demeanor on the stand.

> Once inside, the troopers observed defendant seated in a chair nearby and asked him whether his name was Robert Castapheny. He answered affirmatively and stood up, although it is unclear whether he did so independently or at the direction of Sgt. Frye. Sgts. Frye and Brown testified that they then noticed a baggie of marijuana on the chair where he had been sitting, and a bulge in his pants pocket. Sgt. Frye patted defendant down and discovered relatively large quantities of powder cocaine and crack cocaine, as well as $1,905.00 in cash.[2] Defendant was then arrested and taken to the Logan detachment of the West Virginia State Police.

Id., # 59, at 1-3.

> The government has failed to prove by a preponderance of the evidence that Tolliver consented to the troopers' entry into her home. It was only after the troopers entered the front room of the house that they observed defendant and had reason to search his person, on which they discovered the evidence that provides the basis for the charges against him. Indeed, prior to entering the house, Sgt. Frye and Sgt. Brown apparently had no reason to believe defendant to be involved in any illicit drug activity; their sole purpose in going to the Tolliver residence was to question him with regard to an unrelated assault on a State trooper.

Id. at 6.

> On June 12, 2006, the Probation Department in the Western District of Pennsylvania filed a petition, alleging that Plaintiff had violated his term of supervised release. That petition was withdrawn on July 5, 2007 and the case was closed. Castapheny, No. 2:96-CR-185, # 2488. Plaintiff is currently incarcerated in the Pennsylvania State Correctional Institution at Houtzdale.

(*Id.*, at 3-6.)

---

[2] Much of the testimony and argument at the hearing centered around discrepancies between the troopers' testimony about the marijuana they observed on the chair and statements in subsequent police reports about marijuana taken from defendant's person. Because the court grants the motions to suppress on the basis of the troopers' entry into the house, the court need not reach the issues raised by these discrepancies.

## II.     Objections

### a.     Individual Capacity

The defendants' motion asserts that no § 1983 claims can lie against the West Virginia State Police, or against the West Virginia State Troopers in their official capacities. (Mem. Supp. Renewed Mot. Dismiss [Docket 37], at 8.) Magistrate Judge Stanley proposed that the court find "that the Plaintiff's Complaint for money damages against the defendants in their official capacities fails to state a claim upon which relief may be granted." (PF&R, at 8.) The plaintiff concedes that his claims requesting "money damages against the Defendants in their official capacities fail[] to state a claim upon which relief may be granted." (Objections, at 2.) In this case, the plaintiff seeks monetary damages against "[a]ll defendants . . . in their individual and official capacities." (Compl., [Docket 3] at 2.) Accordingly, Magistrate Judge Stanley correctly treated the Complaint as making claims against all defendants in both their individual and official capacities. The portion of the PF&R to which the plaintiff first objects addresses only the plaintiff's claims for money damages against the defendants in their official capacities. As Magistrate Judge Stanley correctly noted, a claim against a state agency or state officials in their official capacity seeking only monetary damages is barred by the Eleventh Amendment. (PF&R, at 8.) The plaintiff's objection seeks to ensure he can still pursue monetary claims against the defendants in their individual capacities and claims for prospective injunctive relief against the defendants in their official capacities. This objection is misplaced, because Magistrate Judge Stanley's PF&R, in relevant part, recommended dismissal with prejudice of only those claims requesting money damages against the defendants in their official capacities. Accordingly, the court **FINDS** that this objection has no merit, and is overruled.

### b. Statute of Limitations

The defendants' motion further asserts that all of the plaintiff's claims are barred by the two-year statute of limitations for § 1983 claims. (Mem. Supp. Renewed Mot. Dismiss, at 8.) Magistrate Judge Stanley proposed that the court find "that the statute of limitations has expired as to all but one of Plaintiff's claims (malicious prosecution)." (PF&R, at 11.) The plaintiff essentially raises two objections to this proposal. First, he asserts that his due process and equal protection claims "could not have been raised prior to the dismissal of charges[,]" that occurred on May 7, 2007. (Objections, at 3.) Second, he asserts that "all of his claims are timely under a 'continuing wrong theory.'" (*Id.*) He asserts that "from early 2006 until June 8, 2006 he was targeted as a new black face in town and was indeed a target of a conspiracy to maliciously prosecute him and all of his claims accrued at the same time as the malicious prosecution." (*Id.*) The plaintiff cites *Robinson v. Maruffi*, 895 F.2d 649 (10th Cir. 1990), for the proposition that "a claim of false imprisonment was not time-barred because the plaintiff's arrest was part of a 'continuing violation' – a conspiracy to prosecute him maliciously – that continued until he was finally acquitted." (Objections, at 4 (citing *Robinson*, 895 F.2d at 655).)

As Magistrate Judge Stanley correctly noted, West Virginia has a two-year statute of limitations for personal injury cases and actions like § 1983 actions. W. Va. Code § 55-2-12(b)(1981); *see McCausland v. Mason County Bd. of Educ.*, 649 F.2d 278 (4th Cir. 1981); *Rodgers v. Corporation of Harpers Ferry*, 371 S.E.2d 358 (W. Va. 1988). The "accrual date," or date upon which the statute of limitations begins to run, is not resolved by reference to state law, but rather occurs "when the plaintiff has a complete and present cause of action." *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (citations omitted).

### i. *Due Process and Equal Protection*

The plaintiff's claims for violation of due process and equal protection of law, liberally construed, include the actions of the police leading up to and including the plaintiff's arrest on June 8, 2006. Indeed, the plaintiff states that his § 1983 action "aris[es] from state police officers [sic] violations of due process and equal protection." (Objections, at 3.) Contrary to the plaintiff's objection, these claims were not contingent on the subsequent dismissal of charges against the plaintiff; Mr. Castapheny had a "complete and present cause of action" as soon as the alleged wrongful actions occurred. *Wallace v. Kato*, 549 U.S. at 388; *see Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995) (en banc) ("Under federal law a cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action.") (citation omitted). Thus, his claims for violations of due process and equal protection accrued up to and through his arrest on June 8, 2006, and the two-year statute of limitations as to those claims expired no later than June 8, 2008. Accordingly, the court **FINDS** that this objection has no merit, and is overruled.

### ii. *Continuing Wrong*

Next, the plaintiff asserts that all of his claims are timely under a "continuing wrong" theory. He asserts that he was a target of a conspiracy to maliciously prosecute him and that all of his claims therefore accrued at the same time as his claim for malicious prosecution. He cites in support of this claim, *Robinson v. Maruffi,* where the United States Court of Appeals for the Tenth Circuit found that there was an allegation of a conspiracy by the police to cause malicious prosecution of the plaintiff, which included police officers' tampering with witnesses and knowingly presenting false evidence and perjury to the jury. *Id.*, 895 F.2d at 654. There, the conspiracy allegedly

continued throughout two criminal trials, which eventually resulted the plaintiff's acquittal. *Id.* The Tenth Circuit was persuaded that the plaintiff's claims for false arrest and imprisonment were essentially a part of the malicious prosecution conspiracy, and therefore did not accrue until the plaintiff was finally acquitted. *Id.* Because, as discussed below, the plaintiff's Complaint fails to state a claim upon which relief can be granted for malicious prosecution, he cannot escape the statute of limitations bars to his other claims under this theory. Accordingly, the court **FINDS** that this objection has no merit, and is overruled.

### c. Failure to State a Claim Upon Which Relief Can Be Granted

The only remaining claim that allegedly occurred within the statute of limitations is the plaintiff's claim for malicious prosecution. The defendants' motion asserts that the plaintiff's claim fails to state a claim upon which relief can be granted, because there was clear probable cause to arrest the plaintiff, negating an essential element of a malicious prosecution claim. Magistrate Judge Stanley proposed that the court find "that the prosecution of Plaintiff was not wrongfully instituted and certainly not groundless [. . . and t]here was ample evidence recovered which established that Plaintiff was engaged in multiple violations of Federal and State law." (PF&R, at 12.) Although the evidence discovered on the plaintiff's person was later suppressed in the plaintiff's criminal case, the defendants cite *Townes v. City of New York*, 176 F.3d 138, 149 (2d Cir. 1999) to support their assertion that the suppression does not vitiate the probable cause the officers' had to arrest the plaintiff. The plaintiff asserts in his objection to this recommendation that he "has proof that he was the target of an unlawful, unreasonable and arbitrary investigation and prosecution." He states that the "Defendants and/or agents and subordinates of the Defendants conducted a series of illegal traffic stops without justification and all under the threat of violence and arrest for the sole purpose

of continuing the conspiracy of maliciously prosecuting this new black face 'that has no legitimate reason for being in Logan West Virginia [sic].'" (Objections, at 5.) Assuming that plaintiff's objection asserts that there was no probable cause to arrest him, or to prosecute him after his arrest at Ms. Tolliver's residence on June 8, 2006 (the only incident alleged in the Complaint to have resulted in prosecution), a *de novo* review of the plaintiff's Complaint reveals that it clearly fails to state a Federal or state law claim for malicious prosecution upon which relief can be granted.

As the Supreme Court has made clear, § 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 (1979). Because of this established principle, the Fourth Circuit has recognized that "there is no such thing as a '§ 1983 malicious prosecution' claim." *Lambert v. Williams*, 223 F.3d 257, 262 (4th Cir. 2000). Instead, an appropriate § 1983 claim in this context is "a claim founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution–specifically, the requirement that the prior proceeding terminate favorably to the plaintiff." *Id.* (citing *Brooks v. City of Winston Salem*, 85 F.3d 178, 183 (4th Cir. 1996). "The common law tort of malicious prosecution is well-established: a prima facie case of malicious prosecution must include (1) the initiation or maintenance of a proceeding against the plaintiff by the defendant; (2) termination of that proceeding favorable to the plaintiff; (3) lack of probable cause to support that proceeding; and (4) the defendant's malice." *Id.* at 260 (*citing* W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts 874 (5th Ed.1984)); *see also Clark v. Druckman*, 218 W. Va. 427, 433-34 (2005) (*citing* Syl. Pt. 1, *Lyons v. Davy-Pocahontas Coal Co.*, 75 W.Va. 739 (1915) (At common law, "[i]n order '[t]o maintain an action for malicious prosecution

it is essential to prove: (1) That the prosecution was malicious; (2) that it was without reasonable or probable cause; and (3) that it terminated favorably to plaintiff.'").

Liberally construed, the plaintiff's Complaint alleges a conspiracy between "the defendants" (although it does not specify which defendants or what they did in furtherance of the conspiracy), and that the proceedings ultimately terminated in his favor. The plaintiff has failed, however, to allege or provide facts supporting an essential element of any claim for malicious prosecution, the lack of reasonable or probable cause. The plaintiff has not alleged, nor do the facts support any allegation that the officers lacked probable cause to arrest him after the discovery of powder cocaine, crack cocaine, and $1,095 on his person. The later suppression of this evidence does not vitiate the probable cause the officers had to arrest the plaintiff after they discovered the evidence, or the probable cause supporting the resulting criminal charges. *See Townes v. City of New York*, 176 F.3d at 149; *Ware v. James City County, Virginia*, 652 F.Supp.2d 693 (E.D. Va. 2008); *Vaughn v. Davis*, No. 8:07-cv-1173, 2007 WL 867761 (D. S.C. Jan. 31, 2008). Accordingly, the plaintiff's claim for malicious prosecution fails to state a claim for which relief can be granted. The court **FINDS** that this objection has no merit, and is overruled.

### IV. Conclusion

I have reviewed *de novo* those portions of the PF&R to which the plaintiff objects. For reasons set forth above, the court overrules the plaintiff's objections and **ADOPTS** the Magistrate Judge's proposed findings. Accordingly, the Defendants' Renewed Motion to Dismiss [Docket 36] is hereby **GRANTED**. The plaintiff's Complaint is hereby **DISMISSED with prejudice**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: January 3, 2011

Joseph R. Goodwin, Chief Judge